UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MICHAEL MOLLER, )<br>Defendant. )<br>) | No. 1:20-cr-00088-MSM |

ORDER

Mary S. McElroy, United States District Judge.

## I.  INTRODUCTION

On October 14, 2021, Michael Moller was sentenced for one count of bank fraud to a period of 70 months of incarceration, followed by three years of supervised release, $599,251 in restitution, and a $100 special assessment, as a result of a plea agreement. (ECF No. 14.) On the same day, he was sentenced on CR 20-81-MSM, for a violation of probation (imposed in connection with armed robbery), to one year and one day incarceration. The sentences were to be served consecutively, for an aggregated total of 82 months, one day. The Court agreed to Mr. Moller's express request, agreed to by the government, to impose the violation sentence first, to be *followed* by the fraud sentence. Mr. Moller, who has a significant previous record of federal crimes and has served in federal prisons before, believed that he would have

1

a greater chance of being eligible for sentence reduction programs were the 70-month sentence to follow the one-year sentence instead of the other way around.

Within two months Mr. Moller began filing motions for relief from the sentence and its execution, beginning with a Motion to be transferred to a different prison (ECF No. 44). That was followed a month later by his declaration that he intended to file a motion for compassionate release (ECF No. 45) and, ultimately, he filed seven motions for compassionate and/or immediate release (ECF Nos. 58, 81, 83, 92, 101, 103, 120), along with motions to alter the judgment (ECF No. 68) and to vacate the sentence (ECF No. 130).[1] The government opposes compassionate release. (ECF No. 61). A hearing was held on June 22, 2023, and Mr. Moller has since filed a motion for a second hearing and a Motion for Stay (ECF No. 148), as well as a motion to appoint counsel (ECF Nos. 150, 151).

This Order DENIES all pending Motions, as explained below, and includes a direction to Mr. Moller that, with approximately 111 documents filed in the 18 months *after* the date of sentencing, he is restricted from filing any additional documents challenging, modifying, or affecting his conviction or sentence without express permission of the Court.

### A.   COMPASSIONATE RELEASE

The federal law governing imposition of sentence, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194,

---

[1] Many motions have been previously denied without prejudice (ECF No. 81, 83, 92, 101, 103, text order of May 9, 2023).

2

5239 (2018) permits courts to reduce a term of imprisonment, once administrative remedies are exhausted, if it finds that "extraordinary and compelling reasons warrant such a reduction." *United States v. Graham,* No. C.A. 13-cr-132-MSM, 2022 WL 15434513, at *1 (D.R.I. Oct. 27, 2022), quoting 18 U.S.C. § 3582(c)(1)(A). Mr. Moller has exhausted his administrative remedies; his request has been denied by the Bureau of Prisons ("BOP"). (ECF No. 58-2). The Court must therefore review his motion to determine whether extraordinary and compelling reasons exist to warrant a sentence reduction and, if so, if such a reduction would be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). "Put another way, the district court must find that the defendant's situation constitutes the type of 'extreme hardship' that the compassionate release statute is designed to ameliorate." *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (quoting *United States v. Havener*, 905 F.2d 3, 6 (1st Cir. 1990)). Finally, "the district court must consider any applicable section 3553(a) factors and 'determine whether, in its discretion, the reduction … is warranted in whole or in part under the particular circumstances of the case.'" *United Territories v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4 (alteration in original)).

18 U.S.C. § 3582(c)(1)(A)(i), vests this Court with the authority to modify a sentence of imprisonment if "extraordinary and compelling reasons warrant such a reduction." "[O]nce a defendant shows that he has exhausted the Bureau of Prisons' administrative process for compassionate release, or thirty days have lapsed without a decision, whichever occurs first, a district court may reduce a defendant's term of

3

imprisonment provided the court determines: (1) extraordinary and compelling reason warrant the reduction; (2) the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) favor release." *United States v. Saad*, No. 16-cr-00035-JJM, 2022 WL 35806, *1 (D.R.I. Jan. 4, 2022) (internal citations omitted). The statute itself does not define "extraordinary and compelling reasons" that justify a sentence reduction or modification; therefore, any information the court finds relevant may be considered, with the explicit exception of that related only to rehabilitation. *United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022). "[U]ntil the Sentencing Commission speaks, the only limitation on what can be considered an extraordinary and compelling reason to grant a prisoner-initiated motion is rehabilitation." *United States v. Trenkler*, 47 F.4th 42, 48 (1st. Cir. 2022).

> [A] district court, reviewing a prisoner-initiated motion for compassionate release in the absence of an applicable policy statement, may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief. It follows that a district court adjudicating such a motion may consider the FSA's non-retroactive amendments to the scope of the mandatory minimum penalties under section 841(b)(1)(A) on a case-by-case basis grounded in a defendant's individualized circumstances to find an extraordinary and compelling reason warranting compassionate release.

*Id.* at 47

Mr. Moller's Motion for Compassionate Release (ECF No. 58), which has been updated and renewed several times, is predicated largely on his medical condition as a diabetic. In the Affidavit accompanying his original motion, he contended that the institution in which he is confined was providing him substandard treatment, not

4

administering his insulin as prescribed, and not providing him with a diet appropriate for a diabetic. He has submitted medical records in support of his claims and the government has submitted updated records. (ECF No. 58-3, 80-2, 146.) More recent paperwork, while repeating the assertions of inadequate medical treatment, alleged that, among other ill effects, his vision is deteriorating. (ECF No. 103, at 4, 130-2). Other motions cite additional burdens caused by his incarceration.

To determine whether the circumstances in any case are extraordinary and compelling and warrant compassionate release, the Court relies on the plain meaning of the words. *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st. Cir. 2021).

> The plain meaning of "extraordinary" suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree. See Webster's Third New International Dictionary of the English Language Unabridged 807 (1981) (defining "extraordinary" as "going beyond what is usual, regular, common, or customary"); see also United States v. Hunter, 12 F.4th 555, 562 (6th Cir. 2021) (suggesting that such reason must be "most unusual," "far from common," or "hav[e] little or no precedent"). By the same token, the plain meaning of "compelling" suggests that a qualifying reason must be a reason that is both powerful and convincing. See Webster's Third, supra at 462 (defining "compelling" as "forcing, impelling, [or] driving [circumstance]" and as "tending to convince or convert by or as if by forcefulness of evidence"); see also Hunter, 12 F.4th at 562.

*Canales-Ramos*, 19 F.4th at 566-67. Mr. Moller has presented no circumstances that could fairly be deemed to be extraordinary and compelling. His health condition can be managed within the BOP and is not so extraordinary that continued care within the institution would be difficult or impossible. In fact, in a proposal he has put forth to be confined at the Wyatt Detention Center, he praised the care there, reporting that his sugar was under control and his diet was good when confined at

5

Wyatt. (ECF No. 152.) If in fact he is receiving substandard medical care elsewhere, and if he can prove that, he has recourse to other remedies and early release is not the answer. The Motion for Compassionate Release (ECF No. 58) is DENIED; the Motions to Supplement his filings regarding release (ECF No. 80), for expedited decision (ECF No. 111), and for Emergency Release (ECF No. 120) are also DENIED. The motion for a hearing (ECF No. 127) GRANTED *pro forma*, as the hearing was held on June 22, 2023. The Motion for updated medical records is DENIED as moot, as Mr. Moller submitted those records. (ECF No. 140, 146.)

### B. MOTION TO VACATE AND RE-SENTENCE

Mr. Moller has put forth an argument that because the expectations of the Court, defense, and the government when his sentence was imposed have not come to pass, he is entitled to re-sentencing to carry out what he terms "intent" of the Court and parties at the time. Failing compassionate release, his fallback position is that he should be re-sentenced to a single 82-month term.[2]

At the original sentencing much attention was given to the ordering of the two sentences: one year and a day on the probation violation, and 70 months on the bank fraud. Mr. Moller requested that the fraud sentence be consecutive to the violation sentence, and not the other way around. (ECF No. 76, at 39.) He was convinced that if that were the ordering, he would be eligible for reductions in the time he had to serve under the First Step Act *and* because he would be eligible for the Residential

---

[2] The government does not, in the abstract, object a single 82-month term, but it does not agree with the bases of Mr. Moller's arguments that he is entitled to that result. (ECF No. 128.)

Drug Abuse Program ("RDAP")[3] which carried a possible one-year reduction. Thus, he believed, the ordering of the sentences the way he wanted would give him the potential of two years off the pronounced incarceration term. (ECF No. 76, at 39, 42.)[4]

The government did not object and the Court complied. Now Mr. Moller complains that he has not been found eligible for these reductions and, although he still prefers compassionate release, he requests that the Court vacate the sentences and impose a single 82-month and one day sentence which he believes would cement his eligibility. (ECF No. 152.)

As to eligibility for First Step reduction, the government represented at the hearing that, based on its lengthy discussion with the BOP, it appears that Mr. Moller has in fact received reductions under the First Step Act and may receive more. While Mr. Moller refutes that representation, he could not produce any documentation from the BOP supporting his belief, and the Court accepts the representation of the

---

[3] RDAP is a federal program that operates residential-based treatment within larger prison facilities. A reduction in time to serve is possible of up to one year. "Offenders live in a unit separate from general population; they participate in half-day programming and half-day work, school, or vocational activities. RDAP is typically nine months in duration." https://www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp

[4] He also contends that even with his own experience serving federal time and navigating that system, and even though he himself requested the ordering of the sentences based on his professed knowledge of federal calculations and eligibility, it was his counsel's fault for not knowing better and overriding his wishes. (ECF No. 130.) The Court does not agree. Clearly, based on the prosecutor's discussions directly with the Bureau of Prisons, which he described at the June 22, 2023, hearing, this is a complicated administrative matter and cannot be predicted with certainty at the time of sentencing.

government.  As to reductions for participation in the RDAP program, there are two reasons why the Court is not willing to alter the sentence on that account.  First, Mr. Moller admits that he told the BOP he had no substantive drug abuse problem; an existing substance abuse disorder, not surprisingly, is a requirement of eligibility.  It appears to have been *that* representation that affected his eligibility, not the ordering of the sentences.  While Mr. Moller has an explanation for why he said that, and even if there were some tactical advantages that prompted him to do so, that was something over which he had control and he can perhaps correct the BOP understanding if it is in error.  Second, there is a disconnect in terms.  At sentencing, Mr. Moller's concern was *eligibility* for the program.  It does not appear that the ordering of sentences affects his eligibility: it *may* affect whether he receives credit for completion of the program because it is not automatic.  Persons whose current or past criminal history includes a serious violent offense are eligible to participate but are ineligible for a sentence reduction.[5]  Mr. Moller's history includes armed robbery, the crime giving rise to the probation violation at issue here.

      Mr. Moller appears to be eligible to participate in the program, for the obvious benefit of drug abuse treatment whether he receives a sentence reduction or not.  All that he could have expected when the Court granted his preferred ordering of sentences was to be considered *eligible* for participation.  The Court does not control, and made no representations about, his ability to actually obtain reductions.  For that

---

[5] https://oig.justice.gov/reports/BOP/e302/app1.html#:~:text=An%20%20inmate%20must%20meet%20%2C%20(5)%20serving%20a%20

reason, the Court sees no disparity between what was anticipated, and may have been intended, at the sentencing and the reality that has played out. The Motion to Vacate (ECF No. 130) is DENIED. The Motions for retroactive application of sentencing guidelines are DENIED (ECF Nos. 71, 73), as is the Motion to Stay Decision and for leave to submit a post-hearing Memorandum (ECF No. 148). The Motions for a second evidentiary hearing, and for appointment of counsel are DENIED. (ECF No. 150, 151.) Finally, Mr. Moller's Proposal for a resolution of this conflict is noted, but not accepted. (ECF No. 152.)

### C. FINAL NOTE

Mr. Moller has learned the hard way of the additional punishments criminal activity imposes, beyond confinement. His most recent motion recounts that he was in jail in 2011 when one of his brothers committed suicide and he was unable to grieve with his family. Very recently, a second brother died, and he learned of the death by telephone. (ECF No. 103, at 1.) While the Court understands that these secondary effects of confinement can be emotionally devastating, the separation from his family at a time when it needed him apparently had little effect on his behavior in 2011, as he was confined again when his second brother died. The Court is sympathetic, but separation from family, and the "helpless" feeling that Mr. Moller reports, *Id.,* is intrinsic to incarcerative punishment for crime and not a reason warranting early release.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge


Date: July 25, 2023