# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
| --- | --- | --- |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:20-cr-088-JJM-LDA |
| | ) | |
| MICHAEL MOLLER, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Michael Moller has filed a motion under 28 U.S.C. § 2255 to vacate his prior convictions or vacate the sentences arising from those convictions. (ECF Nos. 130, 174). Mr. Moller asks the Court to vacate his sentences or convictions because: (1) he received ineffective assistance of counsel ("IAC"), (2) his guilty plea was not knowing, informed, and intelligent, and (3) the unintentional aggregation of his sentences deprived him the ability to earn early release credits. The Court finds no merit to Mr. Moller's writ and thus, DISMISSES his petition. Further, an evidentiary hearing is not required because the record conclusively refutes Mr. Moller's petition.[1]

---

[1] The Court may properly deny an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. When the Court dismisses a § 2255 claim without holding a hearing, allegations of fact in the petition are taken as true "unless those allegations are merely conclusory, contradicted by the record, or

## I.    BACKGROUND

On September 22, 2020, Mr. Moller was arrested for violating 15 U.S.C. § 645(a) (making false statement to influence the Small Business Association ("SBA") and 8 U.S.C. § 1344(2) (bank fraud) arising from fraudulent loan applications he submitted under the Paycheck Protection Program (PPP). *See* ECF Nos. 3, 7.  On October 27, 2020, Mr. Moller pleaded guilty to one count of bank fraud and admitted to violating his supervised release.[2]  He made this plea pursuant to a negotiated plea deal, in which, among other things, the government agreed not to charge him with aggravated identity theft (18 U.S.C. § 1028A)—which would have exposed Mr. Moller to a mandatory consecutive sentence of two years imprisonment.  *See* ECF No. 14.  Mr. Moller and the government also jointly agreed to recommend a sentence of one year and one day for his supervised release violation to be served consecutive to any sentence imposed for the bank fraud charge.  *Id.* at 3.  Additionally, Mr. Moller

---

inherently incredible." *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002); *Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007).  Moreover, "if the claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing." *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).

[2] The acts supporting the basis for Mr. Moller's arrest occurred while he was serving a supervised release term for a bank robbery conviction in the District of Massachusetts.  See 3-1 at 1.  Thus, Mr. Moller also violated the terms of his supervised release. Mr. Moller's Massachusetts supervised release case was transferred to the District of Rhode Island (20-cr-81-MSM).

waived his rights to (1) plead not guilty, (2) a jury trial, and (3) to appeal the conviction and sentence if the Court imposed a sentence within or below the sentencing guideline range that the Court determined. *Id.* at 5.

At his sentencing hearing, Mr. Moller's counsel requested he serve his 12-month and one day supervised release violation sentence *before* his 70-month bank fraud conviction sentences as such a sentence order could help with Mr. Moller's placement within the Bureau of Prisons ("BOP"). Counsel specifically noted that "[i]f he is sentenced on the [supervised release violation] first the [BOP] may conclude that that sentence is already expired because he's already served over a year in federal custody." ECF No. 76 at 39. The government did not object and the Court granted counsel's request, entering a judgment reflecting the requested sentence order.[3]  *See* ECF No. 42.

That said, the Court's judgment in CR20-81-MSM, ordered his supervised release violation sentence to run consecutive to his bank fraud charge. *See* ECF No. 10 in Case No. CR20-00081-MSM. The BOP ultimately determined that Mr. Moller was to serve his bank fraud sentence before his supervised release violation sentence. As a result, Mr. Moller moved for the Court to correct the sentences, requesting to make it clear that he was to serve

---

[3] The Court sentenced Mr. Moller to "70 months of incarceration, 3 years of supervised release, $100.00 special assessment, $599,251.00 in restitution to be served consecutive to the sentence in CR20-81-MSM [the supervised release violation sentence]." ECF No. 42.

his supervised release violation sentence first.  *See* ECF No. 15 in Case No. CR20-00081-MSM.  Mr. Moller asserted that if his sentences were properly ordered that way, his 12-month sentence would have been deemed "served"— because he already spent 12 months and 1 day in custody— and he would have been committed to BOP only for his 70-month sentence.  *See id.* at 2.  The Court acknowledged the sentencing error and on May 9, 2023, it granted Mr. Moller's motion only as to amending the sentencing judgment to reflect the order of sentences Mr. Moller initially requested.  *See* Case No. CR20-00081-MSM May 9, 2023, Text Order.

Mr. Moller's conviction became final (ECF No. 109), and he timely filed the instant motion, followed by a timely amended motion.[4]  ECF No. 130; ECF No. 174.  His recent Supplemental Memorandum adds claims not raised in his amended § 2255 petition.  ECF No. 191.  The government has opposed Mr. Moller's motion to vacate.  ECF Nos. 128, 193.

## II.  ANALYSIS

Section 2255 provides for post-conviction relief only if a petitioner was sentenced in violation of the Constitution, his sentence was imposed by a court that lacked jurisdiction, it exceeded the statutory maximum, or the sentence is

---

[4] The Court granted Mr. Moller's Motion to Amend (ECF No. 174) his motion to vacate on November 22, 2024.  *See* ECF No. 174; Nov. 22, 2024, Docket Entry.

otherwise subject to collateral attack. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In trying to collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must be a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474. A plea made voluntarily and intelligently "may not be collaterally attacked." *Wilkins v. United States*, 754 F.3d 24, 27 (1st Cir. 2014).

## A. *DUBIN*-BASED CHALLENGES

In his § 2255 motion, Mr. Moller first raises several claims arising from the Supreme Court's decision in *Dubin v. United States,* 599 U.S. 110 (2023). Mr. Moller asserts that in *Dubin,* the Supreme Court narrowed § 1028A's scope—making the statute inapplicable to him when applying *Dubin* retroactively. In turn, Mr. Moller contends that: (1) his counsel was ineffective for failing to investigate and contest the validity of the aggravated identify theft charge under § 1028A, and (2) his guilty plea was less than knowing, informed and intelligent because he would not have entered such a plea had his counsel discovered and told him that § 1028A was inapplicable to him. ECF No. 191 at 11-12. The government counters that: (1) Mr. Moller could have been charged with aggravated identify theft even after the *Dubin* decision, (2)

his counsel was not ineffective because "the law does not require counsel to anticipate changes in the law," and (3) even if his counsel acted unreasonably when they failed to predict the law, Mr. Moller cannot demonstrate any resulting prejudice. ECF No. 193 at 8. The Court will address each argument in turn.

## I.  Applicability of § 1028A to Mr. Moller's Conduct

Some background on the *Dubin* decision is needed to understand the gravamen of Mr. Moller's arguments. In *Dubin,* the Supreme Court held that § 1028A did not apply to the defendant's conduct because the use of another's means of identification was not the crux of what made his predicate offense conduct fraudulent. 599 U.S. at 132. In that case, the defendant was convicted of healthcare fraud because he overstated the qualifications of an employee performing medical services when billing to receive an inflated reimbursement from Medicaid. *Id.* at 114. For these acts, the defendant was also convicted of aggravated identity theft under § 1028A(a)(1), which applies when "during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." *Id.* at 115 (alterations in original) (quoting § 1028A(a)(1)). The government asserted that the defendant violated § 1028A(a)(1) because he included the patient's Medicaid reimbursement number—i.e., means of identification—in his fraudulent billing. *Id.*

But the Supreme Court disagreed, explaining that § 1028A(a)(1) was limited to when "the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method." *Id.* at 114.  The Court elaborated that under § 1028A, "[w]hen a means of identification is used deceptively, this deception goes to 'who' is involved, rather than just 'how' or 'when' the services were provided." *See id.* at 123.  Accordingly, the Supreme Court held that § 1028A did not apply to the defendant's conduct because the crux of what made his overbilling criminal was the misrepresentation of the employee's *qualifications*—i.e., *"how* and *when* the services were provided,"— not the use of patient's name— i.e., "not *who* received the services." *Id.* at 132.

Applying *Dubin*, Mr. Moller asserts that § 1028A was inapplicable to him because the use of other individuals' names in fraudulent PPP loan applications "was only ancillary to the PPP loan deception." ECF No. 191 at 11-12.  He contends that the crux of what made his PPP scheme criminal was the false information he presented to the SBA to obtain PPP loans.  ECF No. 174-1 at 1.  As another basis for § 1028A's alleged inapplicability, Mr. Moller argues he stole no one's identity during these fraud schemes because he did not use any applicant's identification without their consent.  ECF No. 191 at 11.

The government counters that § 1028A did apply to Mr. Moller's conduct because the use of other's identities was the crux of his PPP loan fraud scheme.

ECF 193 at 12. Specifically, the government points out that Mr. Moller used three other individuals' names, dates of birth and social security numbers in his fraudulent PPP loan applications and even posed as one of the individuals in a recorded conversation with an undercover agent. *Id.* Further, the government highlights that at least one of the individual's did not have any knowledge that Mr. Moller used his identity information on the loan applications and considered themselves an identity theft victim. The government asserts that this case is distinguishable from *Dubin* because the defendant in that case did not mispresent the names of the patients he treated — the "who —" but misrepresented the amount Medicare owed to him based on the services provided — the "how." *Id.*

Starting with Mr. Moller's contention that he used the other's identification information in the PPP loan applications with their consent, such an assertion does not make § 1028A inapplicable to his conduct because the statute does not "require that the means of identification be stolen, or otherwise taken without permission of the owner." *United States v. Berroa*, 856 F.3d 141, 155 (1st Cir. 2017) (quoting *United States v. Ozuna-Cabrera*, 663 F.3d 496, 498 (1st Cir. 2011)). Rather, the First Circuit has held that "regardless of how the means of identification is actually obtained, if its subsequent use breaks the law—specifically, during and in relation to the commission of a crime enumerated in subsection (c)—it is violative of

§ 1028A(a)(1)." *Ozuna-Cabrera*, 663 F.3d at 499.  Applying these principals to this case, it does not matter that Mr. Moller may have consensually obtained the means of identification of the applicants he listed in his PPP loan applications.  What matters is that after he purportedly gained such consent, he then used their means of identification to break the law by using such information to commit bank fraud.  *Ozuna-Cabrera*, 663 F.3d at 499.  So, Mr. Moller cannot evade § 1028As application to his conduct based on these claims of consent.[5]

The next inquiry is whether the misuse of the means of identification was the crux of what made Mr. Moller's bank fraud criminal.  Returning to *Dubin,* the Supreme Court explained that to be the crux of a fraud or deceit offense, "the means of identification specifically must be used in a manner that is fraudulent or deceptive.  Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." 599 U.S. at 131–32.  Here, Mr. Moller pleaded guilty to bank fraud under § 1344(2), which proscribes

---

[5] Additionally, the facts Mr. Moller admitted to at his change of plea hearing contradicts his claims that all the applicants he listed in his fraudulent PPP loan application gave him consent to use their identity information.  *See* ECF No. 75 at 21.  Specifically, Mr. Moller did not contest the fact that one of the listed applicants, whose information he used in eight applications, attested to having no knowledge that Mr. Moller was applying for PPP loans in his name.  Thus, even if consent was dispositive under § 1028A, Mr. Moller admitted to the fact that one applicant did not consent to the use of their information in the fraudulent PPP loan applications.  *Id.*

knowingly executing a scheme "to obtain moneys . . . under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."  In pleading guilty, Mr. Moller admitted to submitting eleven fraudulent PPP loan applications in his name and that of *three* other individuals.  *See* ECF No. 75 at 24.  Ten of those applications were submitted under the names of those three individuals.  *See id.* at 20-23.

In applying for those 10 PPP loans, Mr. Moller was misrepresenting to the financial institutions "who" was seeking those loans.  The use of those individuals' identity information was not "ancillary" to completing the application but crucial to what made Mr. Moller's bank fraud fraudulent because, to obtain those PPP loans, he *fraudulently represented* that those individuals: (1) were the actual PPP loan applicants, and (2) owned businesses with multiple employees on payroll.  *See* ECF No. 12.  So, *Dubin* does nothing to disturb the applicability of § 1028A to Mr. Moller's conduct because his fraudulent use of other individuals means of identification was at the crux of what made his PPP loan criminal.

## II.  Ineffective Assistance of Counsel

Mr. Moller next asserts that he had IAC during the plea process because, applying *Dubin* retroactively means that his counsel negotiated around an offense—aggravated identity theft— that did not apply to him and told him to plead guilty avoid such a purportedly inapplicable charge.  ECF No. 174-1 at 3.

He appears to suggest that his counsel did not independently investigate whether § 1028A applied to him because such an investigation would have revealed that he did not steal anyone's identity and the use of other individual's identity information was "ancillary" to his PPP loan scheme—thus rendering § 1028A inapplicable.  ECF No. 191 at 11-12.

The government asserts that even if Mr. Moller was correct that *Dubin* rendered § 1028A inapplicable to this case, he cannot show that his counsel was constitutionally ineffective for not predicting a change in law about how § 1028A is interpreted.  ECF No. 193 at 13.  Alternatively, the government argues that Mr. Moller cannot show prejudice from his counsel's performance because considering the overwhelming evidence against him on the bank fraud charge, Mr. Moller would have pleaded guilty to bank fraud regardless of whether he believed he could not have been charged under § 1028A. *Id.* at 15.

A defendant claiming that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 688, 687-88 (1984); *United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010).  In the court's assessment of the petitioner's allegations, counsel is "strongly presumed to have rendered adequate assistance and made all significant

11

decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).  If the petitioner cannot satisfy one part of the inquiry, the Court need not approach the other.  *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Here, Mr. Moller's counsel's decision not to investigate the merits of a § 1028A charge was not objectively unreasonable.  *Strickland*, 466 U.S. at 690.  As noted above, not only does the record partially refute Mr. Moller's claim that there was evidence that he received consent to use other individuals' identity information in his fraudulent PPP loan applications, but evidence of such consent does not provide a defense to an aggravated identity theft charge. *See Berroa*, 856 F.3d at 155.  Thus, Mr. Moller's counsel acted reasonably in his strategic choice not to pursue such a frivolous defense.[6]

Additionally, Mr. Moller's counsel was not unreasonable in investigating whether the aggravated identity theft statute applied to his conduct post-*Dubin*, because *Dubin* was decided in June 2023—years after Mr. Moller plead

---

[6] For similar reasons, Mr. Moller cannot show prejudice for his counsel's purported failure to uncover the evidence of consent Mr. Moller seeks to present because him receiving consent to use other's identity information for the PPP loan applications does not render § 1028A inapplicable to his conduct. *See Berroa*, 856 F.3d at 155.

guilty in October 2020. Under *Strickland*, a fair assessment of attorney's performance requires evaluating their challenged conduct from the attorney's perspective *at the time*. *Strickland*, 466 U.S. at 689. Thus, even if the Supreme Court's interpretation of § 1028A in *Dubin* rendered the statute inapplicable to Mr. Moller's conduct, that change in law did not inform Mr. Moller's counsel's perspective at the time he told him to plead guilty because that change in law did not occur at that time. Accordingly, counsel was not unreasonable in failing to predict this change in the law when engaging in the plea-bargaining process.[7]

Because Mr. Moller's failure to investigate claims does not show that his counsel's performance was unreasonable, he cannot satisfy both prongs of the *Strickland* test and thus this IAC claim is DISMISSED.

### III.  Constitutionality of Mr. Moller's Guilty Plea

Mr. Moller's next contention is that his guilty plea was not knowing, or intelligent because he would not have pleaded guilty to bank fraud in exchange for the government not charging him with violating § 1028A if he had known that § 1028A was inapplicable to his conduct. ECF No. 191 at 11-12. Tying these assertions to his IAC claim, he reasons that his counsel's failure to

---

[7] Mr. Moller also cannot show prejudice from his counsel's decision not to challenge a potential § 1028A charge, because that statute remained applicable to Mr. Moller's conduct post-*Dubin*.

investigate § 1028A applicability to his conduct led to him making an unintelligent and unknowing guilty plea. *Id.* at 12.

The same *Strickland* principles apply in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In applying the standard to guilty pleas, the first prong is the same. *Id.*

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59. In this sense, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively." *Lockhart*, 474 U.S. at 59–60; *see also Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

As explained above, § 1028A applied to Mr. Moller's conduct because he used other's means of identification to commit PPP loan fraud and thus, his counsel was reasonable in not advising him that the statute was inapplicable. Accordingly, Mr. Moller fails to substantiate a claim that his plea was

unintelligent based on these assertions, and therefore, the Court DISMISSES this claim.

## B.    SENTENCE AGGREGATION AND CONSEQUENCES

Mr. Moller next asserts an IAC claim arising from his counsel's performance at the sentencing hearing. *See* ECF No. 191 at 15-17. Mr. Moller highlights that his counsel meant to ask the Court to fashion a sentence in a manner that would leave him to serve only his bank fraud sentence upon transfer to BOP custody and allow "the BOP more flexibility." *Id.* at 15. However, he contends that his counsel acted unreasonably by not being aware of the controlling law surrounding sentence aggregation under 18 U.S.C. § 3584(c)—which requires the BOP to administratively treat multiple imprisonment terms ordered to run consecutively as a single aggregate term of imprisonment. *Id.* at 16. Mr. Moller stresses that because his counsel requested the Court to order his supervised release violation sentence to be served consecutive to his bank fraud sentence, the BOP treated his sentences as one single aggregate sentence as § 3584(c) required. Essentially, this aggregation of Mr. Moller's sentences purportedly contravened counsel's intended result, which was to have Mr. Moller serve only a sentence for bank fraud.

Mr. Moller argues that had his counsel been aware of the law surrounding sentence aggregation his counsel would have taken a different

15

sentencing approach to avoid such aggregation. *Id.* The approaches he suggests his counsel could have taken to avoid sentence aggregation include asking: (1) "the court to sentence Moller first on the supervised release violation on one day followed by a separate sentencing date on the bank fraud charge on a subsequent date," and (2) "the court to impose a eighty-two (82) month and one (1) day sentence on the bank fraud charge." ECF No. 191 at 16. Mr. Moller claims he was prejudiced by his counsel's failure to avoid sentence aggregation, because the aggregation of his sentences impacted his ability to earn earned-time credits under the First Step Act and the Residential Drug Abuse Program.

The government counters that Mr. Moller's counsel did not act unreasonably for two broad reasons. First, the government contends the Court "almost certainly" would have denied counsel's request not to sentence Mr. Moller for his supervised release violation because the resulting harm was breach of the Court's trust— a harm separate from his bank fraud activity. ECF No. 128 at 5. Second, the government argues that if counsel made the request Mr. Moller urges, it would have violated the parties' executed plea agreement because the parties jointly agreed to recommend Mr. Moller to serve his supervised release sentence consecutive to any sentence received for his bank fraud offense. *Id.* So, the government asserts that Mr. Moller's counsel

acted reasonably and appropriate in requesting a sentence that abided by the plea agreement terms. *Id.*

A review of the § 3584 reveals that a request for the Court to sentence Mr. Moller for his two offenses on separate days would not have prevented the BOP from aggregating those sentences. Sentence aggregation would still occur in that scenario because § 3584(a) provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Accordingly, imposing a sentence for an offense on one day and a sentence for a separate offense on another day would result in those sentences running consecutively by default under § 3584(a). And because § 3584(c) requires the BOP to treat multiple terms of imprisonment ordered to run consecutively as one, aggregate imprisonment term, the BOP would have aggregated those two separate, consecutive sentences.

Mr. Moller's alternative suggestion that his counsel could have simply asked the Court to impose an eighty-month and one-day sentence the bank fraud charge also would have been impermissible under the parties' plea agreement terms. As the government outlined, the plea agreement stipulated that the parties would jointly recommend that Mr. Moller's supervised release sentence violation "be consecutive to any sentence imposed by the Court for the defendant's commission of bank fraud . . . ." ECF No. 14 at 3. The government

did assent to defense counsel's request to flip the order in which Mr. Moller serves his sentences—a minor deviation to the plea agreement terms. However, counsel was reasonable in not toeing the line to request the Court to sentence Mr. Moller *only* for his bank fraud offense, which would have been a major deviation from the parties' joint agreement to recommend that Mr. Moller to serve two distinct sentences for his two offenses.[8]

Because Mr. Moller's has failed to show that his counsel's performance at the sentencing hearing was unreasonable, he cannot satisfy both prongs of the *Strickland* test and therefore this IAC claim is DISMISSED. Accordingly, the Court will not address Mr. Moller's claims of prejudice resulting from the aggregation of his sentences.

---

[8] Mr. Moller asserts that the government was not generally opposed to a single 82-month sentence for his bank fraud offense. *See* ECF No. 191 at 17 n.29. This contention makes is seem like the government would not have objected if defense counsel requested such a sentence at the sentencing hearing. However, what the government stated was that "*if* the Court believes it to be in the interests of justice, the [government] would not object to the reissuance of the judgments . . . to provide that the defendant be sentence to 82 months . . . on the bank fraud charge and time served on the supervised release violation . . .." ECF No. 128 at 6 (emphasis added). This conditional statement comes from the government's opposition to Mr. Moller's Motion to Vacate. *See* ECF No. 128. Therefore, at the time of sentencing, defense counsel had no inclination that the government would assent to a request for a single 82-month sentence for bank fraud—especially considering the parties' plea agreement terms.

### C.    TIMELINESS OF OTHER CLAIMS UNDER § 2255

In Mr. Moller's Supplemental Memorandum (ECF No. 191), he raises new issues alleging: (1) the bank fraud statute did not apply to his conduct, (2) the aggravated identity statute is unconstitutionally vague and (3) IAC for his counsel's failed to investigate and object to the two-point sentencing enhancement under U.S.S.G § 2B1.1(b)(11)(C)(i).[9]  ECF No. 191 at 13-15, 20-21.  To the extent that his Supplemental Memorandum looks to raise new claims, the Court will treat the memorandum as a motion to amend.  Federal Rules of Civil Procedure Rule 15 governs when a federal prisoner seeks to amend their § 2255 petition.  *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005) (citing *United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999)).  The deadline has passed for Mr. Moller to amend his pleading as a matter of course, *see* Rule 15(a)(1)(A)-(B), so he essentially seeks to amend the pleading with "the court's leave" under Rule 15(a)(2)—a rule that instructs the Court to "freely give leave when justice so requires."

The first step in deciding the appropriate disposition for Mr. Moller's motion to amend is determining whether the new claims he proposes to add were raised timely under § 2255(f).  If § 2255s statute of limitations makes Mr.

---

[9]  U.S.S.G § 2B1.1(b)(11)(C)(i) provides for a two-point sentencing enhancement if an offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification."

Moller's proposed new claims time-barred, those claims can survive only if the Court determines that the amendments satisfy certain requirements as to allow them to "relate back" to the date of the original motion. *See* Fed. R. Civ. 15(c). In relevant part, a prisoner must file a motion to vacate a federal sentence under § 2255 within one year of their conviction becoming final. *See* 28 U.S.C. § 2255(f).

Here, because Mr. Moller filed his Supplemental Memorandum on September 19, 2024, the new claims raised within are untimely under § 2255(f) because he raises them almost two years after his conviction became final in December 2022. Consequently, the Court must decide whether these untimely claims "'relate back' to those that the timely filed pleadings—i.e., whether "the claim asserted in the amended plea [ding] 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *United States v. Thinh Cao*, No. CR 05-134-ML, 2011 WL 4055413, at *9 (D.R.I. Sept. 12, 2011) (alteration in original) (quoting *Ciampi*, 419 F.3d at 23); Fed. R. Civ. P. 15(c)(2). The "amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." *Ciampi*, 419 F.3d at 24 (citing *Mayle v. Felix*, 125 S.Ct. 2562, 2570 (2005)).

Here, Mr. Moller's claim that the bank fraud statute is inapplicable to his conduct is based on events separate in time and type from his timely sentence aggregation and *Dubin*-based claims. The sentence aggregation claims centered on his then-counsel's alleged deficient performance at his sentencing hearing, while his claims related to the aggravated identify theft statute arise from the Supreme Court's interpretation of that statute in *Dubin*. Mr. Moller's bank fraud statute claims neither arose from his counsel's performance at his sentencing hearing nor the Supreme Court's interpretation of the aggravated identify theft statute, but focused on whether his conduct satisfied the elements of the bank fraud statute. So, Mr. Moller's bank fraud statute challenge does not arise from the "same core facts" that his timely claims depended on, and thus fails to satisfy Rule 15's "relation back" standard. *See* Fed. R. Civ. P. 15(c)(2). Therefore, the Court DISMISS Mr. Moller's bank fraud statute claim because it does not relate back to the filing of his original timely petition and is time-barred under 28 U.S.C. § 2255(f)(1).

Mr. Moller's claim that the aggravated identity theft statute is unconstitutionally vague also does not arise from the same core facts as his timely claims. His timely challenge to the aggravated identity theft statute's applicability arose from the Supreme Court's determination, in *Dubin*, of when the misuse of another's identification constituted a violation of the aggravated identity theft statute. *See* ECF No. 174-1 at 1-4; ECF No. 191 at 9-13. Mr.

Moller's new claim that the aggravated identity theft statute is unconstitutionally vague arises from Supreme Court Justice Neil Gorsuch's concurring opinion in *Dubin*, in which he asserts that the statute is vague. ECF No. 191 at 13-14 (citing *Dubin,* 110 at 138-139).

While Mr. Moller's new claim arises from the same case as his timely claim, it does not arise from the same core facts because the new claim is based on a concurring justice's contentions on the *constitutionality* of the aggravated identity theft statute, while the timely claim is based on the majority opinion's determination of which conduct *violates* that statute. Mr. Moller's constitutional vagueness challenge is also wholly unrelated to his sentence aggregation claim because, as explained above, the latter claim arose from his counsel's performance at his sentencing hearing. So, the Court DISMISS Mr. Moller's constitutional vagueness claim because it does not relate back to the filing of his original timely petition and is time-barred under 28 U.S.C. § 2255(f)(1).

Lastly, Mr. Moller's IAC claim based on his counsel's purported failure to investigate and object to the two-point sentencing enhancement under U.S.S.G § 2B1.1(b)(11)(C)(i) does not arise out of the same core facts as his original claims. In this claim, Mr. Moller alleges that his then-counsel did not conduct a reasonable investigation in preparation for sentencing and thus purportedly failed to discover the sentencing enhancement at issue was

inapplicable to him.  ECF No. 191 at 20-21.  While Mr. Moller's sentencing aggregation and *Dubin*-based claims invoke IAC claims therein, the relation back standard cannot be met simply "by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *Turner v. United States*, 699 F.3d 578, 585 (1st Cir. 2012).

The IAC claims Mr. Moller tethers to his sentence aggregation and *Dubin*-based challenges takes issue with his counsel's performance at the sentencing hearing and during plea negotiations, respectively.  These events of alleged attorney misfeasance are separate in time and type from the new IAC claim alleging attorney misfeasance failure to investigate in *preparation* for sentencing.  Thus Mr. Moller's new IAC claim does not arise from the same core facts as the original § 2255 claims.  Accordingly, the Court DISMISS Mr. Moller's new IAC claim based on failure to investigate and object to § 2B1.1(b)(11)(C)(i)'s sentencing enhancement because it does not relate back to the filing of his original timely petition and is time-barred under 28 U.S.C. § 2255(f)(1).[10]

---

[10] Even if this claim were timely, Mr. Moller fails to prove that his counsel was ineffective for failing to object to the two-point sentencing enhancement under § 2B1.1(b)(11)(C)(i).  Mr. Moller received that sentencing enchantment for the "the unauthorized transfer or use of any means of

## III.    CONCLUSION

Mr. Moller's requests for relief from his sentences and convictions under § 2255 are DENIED and his petition is DISMISSED.  He has failed to prove a lack of jurisdiction, constitutional error, or fundamental error of law in his convictions and sentences for the supervised release violation and bank fraud offenses.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

December 5, 2024

---

identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(11)(C)(i).  Mr. Moller himself points out that this enhancement is applicable in a scenario when "a defendant who obtains a bank loan using an individual's personal information, such as that listed above, is eligible for this enhancement." ECF No. 191 at 20 (citing U.S.S.G. § 2B1.1 cmt. n.10(C)(ii)(I)).  Based off Mr. Moller's admission that he used other individuals' means of identification to apply for and obtain PPP loans, it was not unreasonable for counsel to determine that this sentence enhancement was applicable to him.