UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) C.A. No. 1:20-cr-088-JJM-LDA |
| MICHAEL MOLLER, Defendant. | ) |

ORDER

Michael J. Moller has moved to reduce his sentence (so-called "compassionate release") under 18 U.S.C. 3582(c)(1)(A). ECF No. 248.[1] The Government objects. ECF No. 250. And Mr. Moller has filed replies. ECF Nos. 251-253, and 255.

Mr. Moller alleges at least four separate "extraordinary and compelling" reasons why the Court should grant his motion: his medical condition, his mother's ailing health and his need to be a caregiver, the lack of aggregation of his sentence, and other factors. He asks the Court to take a holistic approach as set forth in *United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022) and reduce his sentence by twelve months to time served. The Government responds by saying that the reasons for reducing Mr. Moller's sentence do not

---

[1] Mr. Moller incorporated ECF Nos. 89-97; 102-106; 106-108; 111-114; 116-118; 120-124, 126, 130, 133, and 145, and Judge Mary S. McElroy's denial order ECF No. 154, and the exhibits submitted in ECF Nos. 215, 222, 223. The Court has reviewed and considered all submissions.

singularly or collectively equal extraordinary and compelling reasons, and even if they did, the 18 U.S.C. § 3553 factors do not support a sentence reduction.

## I. LEGAL STANDARD

A defendant seeking a sentence reduction must meet several requirements. *United States v. Rivera-Rodríguez*, 75 F.4th 1, 18–19 (1st Cir. 2023). First, they must properly raise the request by meeting the exhaustion requirements in 18 U.S.C. § 3582(c)(1)(A).[2] *Id.* at 19. Second, they must present sufficient "extraordinary and compelling reasons" to call for the reduction. *Id.* Third, consideration of the sentencing factors listed in 18 U.S.C. § 3553(a) must weigh in favor of a reduction. *Id.*; *United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023). Finally, a defendant must not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The defendant bears the burden of proving that their circumstances qualify for early release. *See Rivera-Rodríguez*, 75 F.4th at 18–19.

In 2023, the Sentencing Commission revised U.S.S.G. § 1B1.13, the applicable policy statement, because of the changes prescribed in the First Step Act. *See* 88 Fed. Reg. 28254, 28254-28281 (May 3, 2023); *Quirós-Morales*, 83 F.4th at 84. The updated policy statement on compassionate release motions, both extended the "applicability of its policy statement to prisoner-initiated motions and expand[ed] the scope of what can be considered an extraordinary and compelling reason warranting a sentence

---

[2] Mr. Moller has exhausted his administrative remedies.

reduction." *Quirós-Morales*, 83 F.4th at 84 (citing *Rivera-Rodríguez*, 75 F.4th at 18 n.22).

As revised, § 1B1.13 states that a district court may consider changes in law when deciding whether a defendant has presented an extraordinary and compelling reason justifying release. Relevant here are two subsections of revised Guideline § 1B1.13:

> (5) OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Section 1B1.13(b)(5) is the catch-all provision that allows a court to consider any other circumstances that are similar in gravity to the listed circumstances.

The First Circuit instructs district courts to consider almost "any complex of circumstances" that a defendant alleges as a potential extraordinary and compelling reason for early release. *United States v. Gonzalez*, 68 F.4th 699, 704 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 217 (2023). The only limitations imposed on a district court's discretion[3] were "rehabilitation alone," the "mere fact of a 'pre-First Step Act mandatory life sentence . . .standing alone,'" and "classic post-conviction arguments, without more . . . ." *Id.* at n.3; *see also Quirós-Morales*, 83 F.4th at 83. The First Circuit "made pellucid that district courts 'may conduct a holistic review to determine

---

[3] "District courts reviewing such motions [have] discretion to 'consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief,' including non-retroactive changes to the law." *Quirós-Morales*, 83 F.4th at 83.

whether the [prisoner's] individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release.'"

*Quirós-Morales*, 83 F.4th at 83 (quoting *Ruvalcaba*, 26 F.4th at 27).

> A district court faced with a compassionate release motion has ample, yet not boundless, discretion at both steps. District courts may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief. Because the whole may be greater than the sum of its parts, district courts must be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the extraordinary and compelling standard. Yet this standard is narrow and stringent, because whether a reason is extraordinary and compelling is logically guided by the plain meaning of those terms.

*United States v. D'Angelo*, 110 F.4th 42, 49 (1st Cir. 2024) (cleaned up).

## II. DISCUSSION

### A. Medicals

Mr. Moller alleges that Bureau of Prison ("BOP") "staff have failed to provide timely adequate care for my serious medical conditions, and that these circumstances are similar in gravity to 1B1.13(b)(1)(C)[4] pursuant to (5) Other Reasons." ECF No. 248 at 6. Specifically, he alleges that he was misdiagnosed while at FCC Butner, and that doctors need him to have a colonoscopy and endoscopy for them to give him a true diagnosis. *Id.* at 3–4. The problem with this, he asserts, is that "the wait time for these procedures is about 6 months." *Id.* at 4. And because he does not have a

---

[4] This provision provides: "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

proper diagnosis, the BOP has placed a medical hold on him, keeping him from being transferred to a halfway house to serve out part of his sentence. *Id.*

The medical and prison records the Court has reviewed, do not establish that the treatment Mr. Moller has received from the BOP rises to the level of extraordinary and compelling circumstances to support a sentence reduction. Waiting for diagnostic procedures is often an ordinary vexation of our health care system – and especially so in the prison system. There is no evidence before the Court that Mr. Moller has suffered any extraordinary negative repercussion from the delay or even any alleged misdiagnosis. The evidence shows that Mr. Moller has received extensive and adequate medical care.

Mr. Moller argues that he has been denied access to placement in a residential reentry center ("RRC") by the alleged misdiagnosis and delay in scheduling diagnostic tests. The placement in an RRC is not a right, nor is the failure to be placed in an RRC an extraordinary or compelling reason to reduce Mr. Moller's sentence.

### B. Mother Caretaker

Next, Mr. Moller argues that his sentence should be reduced because his elderly mother has a "complex set of medical issues," and she has surgery scheduled. *Id.* at 7. He also points out that sadly his brother has recently passed away and that his nephew is no longer able to help in her care.[5]

---

[5] Mr. Moller acknowledges that while "this may not rise to the Caretaker provision itself [he] believe[s] it is 'SIMILAR IN GRAVITY' to that provision, and taken in combination with the [ ] rest of my circumstances, satisfies 'OTHER REASONS,' under 1B1.13(5)." ECF No. 248 at 7.

5

Mr. Moller has failed to prove that he the only available care giver for his mother. U.S.S.G. § 1B1.13(b)(3)(C). Without revealing all of Mr. Moller's personal family situation, the Court has concluded that Mr. Moller has not carried his burden to show that his mother's medical condition and health care needs is an extraordinary or compelling reason that is substantially like the guidance from the Sentencing Commission on this topic.

### C. Aggregation of Sentence

The Court sentenced Mr. Moller in CR20-88-MSM (bank fraud – 18 U.S.C. § 1344(2)) to "70 months to be served consecutive to the sentence imposed in CR20-81-MSM." ECF No. 42. In CR20-81-MSM (supervised release violation in an armed bank robbery case), the Court sentenced Mr. Moller to "12 months and one day to run prior to the sentence imposed in CR20-88-MSM." ECF No. 21 in 20-cr-81-MSM. He now asserts that he is not receiving "Earned Time credits" to which he believes he is entitled, and he has not "ever received a day off under the" First Step Act. ECF No. 248 at 7. He argues that he was harmed when the BOP did not follow the judge's directive that he serves his supervised release violation sentence first before his bank fraud sentence. *Id.* He further posits that the Government misrepresented (perhaps as an "honest mistake") to the Court that he suffered no harm because his pattern score was such that he would not be able to obtain "low recidivism" to allow him to earn credit. *Id.* at 7–8.

6

Mr. Moller's argument that his two sentences should have been aggregated is not compelling for several reasons. First, the plea agreement contemplated two sentences. The parties jointly agreed to recommend that Mr. Moller receive a separate consecutive year of imprisonment for violating the terms of his supervised release for bank robbery. Mr. Moller did not request aggregation at sentencing.

Second, Mr. Moller's ability to earn First Step Act credits was unaffected by the fact that his sentences were not aggregated. While Mr. Moller had earned 280 days of First Step Act credit, he cannot apply those credits toward early release because he has been determined to be at a medium risk of recidivism. *See* 18 U.S.C. § 3624(g)(1)(D)(A). An individual determined to be at a high risk of recidivism (55 points or more), or a medium risk of recidivism (40-54 points) cannot apply earned FSA credits toward early release without approval of the Warden. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II). Mr. Moller has received 53 points.[6] The ordering and lack of aggregating of the sentences has had no bearing on Mr. Moller's ability to earn or apply First Step Act credits.

### D. Other Reasons

Mr. Moller also raises the difficulties he encountered when he was transferred from FCI Schuylkill to FCC Butner – including the mess hall being closed, resulting in the substitution of food that was less than adequate, short

---

[6] It is correct, as Mr. Moller points out, that five points were added because Mr. Moller is serving a violent offense (the bank robbery offense that is the subject of the violation of supervised release). Even if those five points were removed, however, Mr. Moller would still have 48 points. He would still be a "Medium" risk of recidivism (40 to 54 points).

7

staffing, increased lockdowns, and the like. None of these conditions rise to the level, individually or collectively, to extraordinary or compelling reasons to reduce Mr. Moller's sentence.

## III. CONCLUSION

Mr. Moller is set to be released on August 3, 2026—in less than eleven months. While petition for a reduction in sentence presents many of the difficulties of life in prison, neither singularly nor collectively do they equal extraordinary or compelling reasons to reduce his sentence. Mr. Moller's Motion to Reduce his sentence is DENIED. ECF No. 248.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

September 12, 2025